UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-22940-RAR
(20-CR-20155-RAR-5)

**JONNATHAN JESUS GONZALEZ**,

    Movant,

v.

**UNITED STATES OF AMERICA**,

    Respondent.

_____/

**ORDER DENYING IN PART MOTION TO VACATE AND
GRANTING EVIDENTIARY HEARING**

**THIS CAUSE** comes before the Court on Movant Jonnathan Jesus Gonzalez's Motion to Vacate under 28 U.S.C. § 2255. *See* Motion to Vacate ("Mot.") [ECF No. 1]. Respondent filed a Response to the Motion, *see* Response ("Resp.") [ECF No. 7], and Movant filed a Reply to that Response, *see* Reply [ECF No. 11]. Having reviewed the pleadings, Movant's criminal docket, and the applicable law, the Court finds that Movant is entitled to an evidentiary hearing limited to the ineffective assistance of counsel claim he raises in Ground Two; all other claims, however, are **DENIED**.

**PROCEDURAL HISTORY**

The Government accused Movant, along with eight other codefendants, of participating in a conspiracy to "unlawfully enrich themselves by obtaining fraudulent loans secured by properties by falsely representing that they were the owners of the properties and using the proceeds for their own personal use and benefit and to further the fraud." Superseding Indictment, *United States v. Mendez, et al.*, No. 20-CR-20155 (S.D. Fla. Feb. 4, 2021), ECF No. 61 at 5. Movant was indicted on six counts: conspiracy to commit bank fraud and wire fraud, in violation of 18 U.S.C. § 1349

(Count 1); two counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts 4 and 7); one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a) (Count 12); one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count 22); and one count of money laundering, in violation of 18 U.S.C. § 1957 (Count 24). *See id.* at 1–19.

On August 25, 2021, Movant entered into a plea agreement with the Government. *See* Plea Agreement, *United States v. Mendez, et al.*, No. 20-CR-20155 (S.D. Fla. Aug. 25, 2021), ECF No. 176. Movant agreed to "plead guilty to Counts 1 and 12 of the superseding indictment," in exchange for the Government dismissing Counts 4, 7, 22, and 24 of the Superseding Indictment. *Id.* at 1. Movant also executed a factual proffer where he agreed that the Government could have proven the following facts, among others, beyond a reasonable doubt:

> In or around October 2019, the Defendant agreed with Carlos Rafael Castaneda Mendez, Genesis Martusciello Gimenez, and Katherine Hansen that Hansen would impersonate M.F.L.M., whom the Defendant knew was a real individual, to open bank accounts and fraudulent obtain loans on [M.F.L.M.'s property]. Hansen subsequently provided a photograph of herself to be used to make a false and fraudulent passport bearing the name and Cedula number [a Venezuelan national identifying number] of M.F.L.M. (the "Fraudulent Venezuelan Passport"). On or about October 31, 2019, the Defendant sent via WhatsApp message to Hansen a forwarded message he had received that included a photograph of the Fraudulent Venezuelan Passport that was produced for Hansen to impersonate M.F.L.M. in furtherance of the fraud.
>
> On or about November 6, 2019, Hansen used the Fraudulent Venezuelan Passport to falsely and fraudulently represent that she was M.F.L.M. to open a personal checking account in the name of M.F.L.M. at a TD Bank branch in Miami, Florida.
>
> [. . . .]
>
> Subsequently, on or about December 5, 2019, the Defendant provided information via WhatsApp messages to Hansen to be used by Hansen in making various wire transfers from the fraudulent [bank account], including, among others, a wire in the amount of $145,000.00 to an account in the name of the Defendant.

In or around January 2020, following default on the initial fraudulent loan on the [property], the Defendant agreed with Castaneda, Gimenez, and Hansen that Hansen would again impersonate M.F.L.M. to obtain another fraudulent loan on the [property] that would refinance the existing $1,950,000.00 fraudulent loan, pay off the initial private lender, and provide a cash payout into the fraudulent [bank account].

[. . . .]

On or about March 6, 2020, the Defendant drove Hansen to a TD Bank branch, located at 1208 SW 8th Street, Miami, Florida, so that Hansen could initiate various wire transfers of the fraudulent loan proceeds from the fraudulent [bank account]. Once inside, Hansen approached a TD Bank employee and produced the Fraudulent Venezuelan Passport and a fraudulent Venezuelan driver's license bearing the name of M.F.L.M., but with a photograph of Hansen, while attempting to make a domestic wire transfer in the amount of $305,000.00 from the fraudulent [bank account]. At that time, however, the fraudulent [bank account] did not have sufficient funds, as the pending incoming wire transfer . . . from the fraudulent loan refinancing had not yet cleared.

The TD Bank employee subsequently notified an off-duty law enforcement officer that was on assignment at the bank about Hansen's attempted wire transfer. The TD Bank employee further told the off-duty law enforcement officer that he/she had observed Hansen arrive at the bank in a white Range Rover with a male driver.

The off-duty law enforcement officer thereafter approached a white Range Rover parked outside. The Defendant was the driver and sole occupant. During the encounter, law enforcement observed a Florida driver's license, bearing Hansen's true name and photograph that matched Hansen, located in the cup holder of the vehicle in plain view. Law enforcement asked the Defendant to whom the identification belonged, and the Defendant advised that it belonged to his girlfriend who was inside the bank.

Law enforcement subsequently detained Hansen, who provided law enforcement with her true name. A search of Hansen revealed the Fraudulent Venezuelan Passport.

M.F.L.M. did not authorize Hansen or anyone else to use her name, Cedula number, or any other personal identifying information to

> open the accounts at TD Bank or apply for the loans on the [property].
>
> The Defendant agrees that the funds formerly on deposit in the [bank account], which were previously seized by the United States, represent the proceeds of the scheme described.

Factual Proffer, *United States v. Mendez, et al.*, No. 20-CR-20155 (S.D. Fla. Aug. 25, 2021), ECF No. 177 at 1–5.

Movant's sentencing hearing took place on October 18, 2021. In accordance with Movant's plea agreement, the Court adjudicated Movant guilty of Counts 1 and 12 and sentenced Movant to a total term of 44 months—20 months as to Count 1 followed by a consecutive term of 24 months as to Count 12. *See* Judgment, *United States v. Mendez, et al.*, No. 20-CR-20155 (S.D. Fla. Oct. 20, 2021), ECF No. 259 at 1–2. Movant did not appeal his conviction or sentence.

## **STANDARD OF REVIEW**

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on a final judgment, pursuant to 28 U.S.C. § 2255, are extremely limited. A prisoner is only entitled to relief under § 2255 if the court imposed a sentence that: (1) violated the Constitution or laws of the United States; (2) exceeded its jurisdiction; (3) exceeded the maximum authorized by law; or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). Thus, relief under § 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982)). If a court finds a claim under § 2255 valid, the court "shall vacate and set the judgment aside shall discharge the prisoner or resentence him or grant a new

trial or correct the sentence." 28 U.S.C. § 2255(b). The § 2255 movant "bears the burden to prove the claims in his § 2255 motion." *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015).

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, the movant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88). "Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*." *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009).

Regarding the deficiency prong, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take" during the proceedings. *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). If "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[,]" counsel did not perform deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong, "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Strickland*, 466 U.S. at 694. If a postconviction movant has pled guilty to the underlying offenses, the prejudice prong is modified so that the movant is instead required to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

## ANALYSIS

Movant raises two grounds for relief in his Motion to Vacate.[1] First, Movant argues that trial counsel was ineffective in advising Movant to plead guilty to Count 12 of the Indictment because "the facts proffered do not constitute a crime under the statute." Mot. at 4. Second, Movant alleges that both the trial court and his attorney "denied his right to appeal" by improperly informing him that "he did not have the right to appeal[.]" *Id.* at 5. The Court will address each claim in turn.

### A. Ground One

Movant alleges in Ground One of the Motion that his trial counsel was ineffective for failing to properly explain each of the elements the Government needed to prove to convict Movant for aggravated identity theft—which he was charged with in Count 12 of the Indictment. According to Movant, his possession of a picture of "M.F.L.M.'s fraudulent Venezuelan passport received from Petitioner's co-defendant"—as opposed to possession of the "tangible passport" itself—could not be used to sustain a conviction for aggravated identity theft. *See* Mot. at 15

---

[1] Although the Motion identifies three "grounds" for relief, "Ground Three" merely argues that "the Court should admit Petitioner to bail pending the disposition of the Section 2255 proceedings." Mot. at 7. The Court has already considered and rejected this argument. *See Gonzalez v. United States*, No. 22-CV-22940, 2022 WL 4291086, at *1 (S.D. Fla. Sept. 16, 2022) ("As Movant himself recognizes, bail can only be granted in 'extraordinary circumstances.' Having reviewed the applicable case law and the allegations in Movant's Motion, the Court concludes that Movant's request for bail should be DENIED.").

("Petitioner was under false impression that proof of any ID (irrespective of purpose) would suffice for a conviction under 18 U.S.C. § 1028A(a)(1). The [aggravated identity theft] charged had no connection to the conspiracy to commit bank fraud and wire fraud (18 U.S.C. § 1349) and could not, therefore, be said to have been [used] during or in relation to a predicate act knowingly transferred, possessed and used the means of identification of another person.") (errors in original). Movant further explains that, had counsel properly discussed the elements of this offense to him, he would not have accepted any plea deal that required him to plead guilty to Count 12. *See id.*

"To convict for aggravated identity theft, the government must prove that the defendant: (1) knowingly transferred, possessed, or used; (2) the means of identification of another person; (3) without lawful authority; (4) during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c)." *United States v. Presendieu*, 880 F.3d 1228, 1240 (11th Cir. 2018) (cleaned up); *see also Flores-Figueroa v. United States*, 556 U.S. 646, 647 (2009) ("[T]he statute requires the Government to show that the defendant knew that the 'means of identification' he or she unlawfully transferred, possessed, or used, in fact, belonged to 'another person.'") (emphasis in original). Movant avers that the Government failed to establish the fourth element of aggravated identity theft, and explains that "the conduct alleged [in] the factual proffer . . . was not in relation to the felony violation in 18 U.S.C. § 1349 (Count One)." Mot. at 15. Put another way, Movant believes that possessing a picture of a fraudulent passport cannot, as a matter of law, be done in relation to any of the felonies listed in 18 U.S.C. § 1028A(c)—specifically, conspiracy to commit bank fraud and wire fraud. *See id.* ("In another word, the predicate charge to the [aggravated identity theft] charge . . . only can be accomplished by using a tangible passport[.]").[2]

---

[2] To clarify, Movant concedes that he committed conspiracy to commit bank fraud and wire fraud (which forms the basis of his conviction on Count 1), but instead argues that possessing a picture of the fraudulent

Respondent advances two counterarguments—one on procedural grounds and one on the merits. Respondent begins by arguing that, by voluntarily entering a guilty plea, Movant "waived all non-jurisdictional challenges to his conviction[.]" Resp. at 8. Although "[a] defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of [his] conviction," a plea does not affect a defendant's ability to challenge "the voluntary and knowing nature of [his] plea[.]" *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). Movant specifically claims that his plea was not knowing or voluntary because counsel incorrectly described the elements of Count 12 and wrongly concluded that the Government could prove each and every one of those elements. *See* Mot. at 15 ("In discussing the nature of the offense with Petitioner, Counsel advised that any use of unauthorized identification—irrespective of the purpose or medium—would make someone guilty of [aggravated identity theft]."). Since counsel's alleged misadvice was inextricably bound with Movant's decision to plead guilty, Movant did not waive this claim on collateral review. *See Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348 (11th Cir. 2015) ("[T]he Supreme Court has expressly held that a defendant does not waive an ineffective assistance of counsel claim simply by entering a plea. Instead, because 'voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases,' courts must continue to apply the familiar two-part test provided by [*Strickland*].") (quoting *Hill*, 474 U.S. at 56–57).[3]

---

passport was not (and cannot be) part of the criminal conduct which formed the basis of Count 1 and, consequently, also cannot serve as the predicate offense for Count 12. *See* Reply at 3.

[3] Respondent also claims that Movant procedurally defaulted on his ineffective-assistance-of-counsel claim since he did not raise the issue on direct appeal. *See* Resp. at 8. This argument has been conclusively rejected by the Supreme Court, which held that the "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003). Since an ineffective-assistance claim may be raised for the first time in a § 2255 motion, the procedural default doctrine does not apply.

Respondent's merits-based argument, however, is much more persuasive. Respondent wholly rejects Movant's contention that possessing a picture of a fraudulent passport is materially different from possessing the physical passport itself since the picture of the passport still allowed Respondent to possess "M.F.L.M.'s name, date of birth, and Cedula number." Resp. at 11. Respondent also points out that this information was "transferred to [Movant's] then-girlfriend/co-conspirator in furtherance of and to aid and abet her impersonation of M.F.L.M. to fulfill the aims of the conspiracy." *Id.* The Court agrees with both of Respondent's points.

*First*, possessing a picture of a fraudulent passport—rather than the passport itself—is sufficient to be found guilty of aggravated identity theft. After all, the statute of conviction only requires the Government to prove that the defendant possessed "a means of identification of another person[.]" 18 U.S.C. § 1028A(a)(1). The federal fraud statute defines the "means of identification" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual," and provides several examples, such as a "name, social security number, date of birth, official State or government issued driver's license or identification number, . . . [or] government passport number[.]" *Id.* § 1028(d)(7)(A). Put simply, the statute does not limit its scope to criminalizing the possession of fake documents (such as a passport, credit card, or driver's license) but instead encompasses all <u>information</u> that can be used to identify a specific person. *See United States v. Barrington*, 648 F.3d 1178, 1193 (11th Cir. 2011) ("By statutory definition, a 'means of identification' includes 'any name or number' when used in conjunction with any other information to 'identify a specific individual.' The 'overriding requirement' of the definition is that the means of identification 'must be sufficient to identify a specific individual.'") (quoting *United States v. Mitchell*, 518 F.3d 230, 234 (4th Cir. 2008)).

To illustrate this point, Respondent convincingly cites *United States v. Meme*, 803 F. App'x 373 (11th Cir. 2020), where the Eleventh Circuit found that there was sufficient evidence to convict the appellant of aggravated identity theft even though the appellant possessed "stolen credit card numbers stored on his phones" rather than the stolen credit cards themselves. *Id.* at 378; *cf. United States v. Spears*, 729 F.3d 753, 755 (7th Cir. 2013) (finding that "it is possible to 'possess' a [means of identification] without committing it to paper").[4] While Movant may not have had actual possession of the fraudulent passport, he still illegally possessed a "means of identification," as the picture of the fraudulent passport contained the same information as the physical passport. The Court therefore rejects Movant's contention that possessing a picture of the fraudulent passport, instead of the passport itself, makes any difference in the eyes of the aggravated identity theft statute.

*Second*, Movant's possession of a photograph was related to his part in the conspiracy to commit bank fraud and wire fraud, and was not, as Movant insists, "incidental to the fraud." Mot. at 15. Movant's central point here is that he never used the photograph to "steal another person's means of identification," to "pass himself off as someone else," or to "open a bank account, obtain a bank loan or refinance an obtained loan," and notes that, even if he wanted to, it was impossible for him to use the picture of the passport to commit bank fraud or wire fraud. *Id.*; *see also* Reply at 3 ("[T]he picture of the fraudulent passport cannot be used and was not used to obtain any bank loan or to open a bank account."). This argument misses the mark in at least two meaningful ways. One, Movant plainly used the picture of the fraudulent passport in furtherance of the conspiracy

---

[4] Movant argues that Respondent's reliance on *Meme* is misplaced since, unlike the appellant in *Meme*, Movant did not purchase or create the fraudulent passport and did not use the passport "for fraudulent activities." Reply at 4. Nevertheless, § 1028A criminalizes the mere possession of another person's "means of identification" (not just its usage), so this distinction is immaterial in terms of establishing guilt. *See* 18 U.S.C. § 1028A(a)(1).

since he admitted that he "sent via WhatsApp message to Hansen a forwarded message he had received that included a photograph of the Fraudulent Venezuelan Passport that was produced for Hansen to impersonate M.F.L.M. in furtherance of the fraud." Factual Proffer, *United States v. Mendez, et al.*, No. 20-CR-20155 (S.D. Fla. Aug. 25, 2021), ECF No. 177 at 2. This admission establishes that Movant did not passively possess the identifying information and, instead, actively provided it to codefendant Hansen, who then used the actual passport to open fraudulent bank accounts for the purpose of misappropriating loan proceeds. *See id.* at 2–4. This admission alone conclusively establishes that Movant used the "means of identification of another" "during and in relation to [a] felony enumerated in [18 U.S.C. § 1028A(c)]," *i.e.*, conspiracy to commit bank fraud and wire fraud. 18 U.S.C. § 1028A(a)(1).

Two, as a member of the conspiracy, Movant was liable for each and every foreseeable act committed by his coconspirators. *See United States v. Mothersill*, 87 F.3d 1214, 1219 n.4 (11th Cir. 1996) ("[A]ll members of a conspiracy are responsible for the acts committed by other members, as long as those acts are committed to help advance the conspiracy and are reasonably foreseeable consequences of the conspiracy."). While Movant may not have personally used M.F.L.M.'s identifying information to "obtain any bank loan or open a bank account," Reply at 3, his coconspirator Hansen did—an act which was reasonably foreseeable since the whole point of the conspiracy was to use the victims' information to "open bank accounts and fraudulently obtain loans" for the personal enrichment of the coconspirators, Factual Proffer, *United States v. Mendez, et al.*, No. 20-CR-20155 (S.D. Fla. Aug. 25, 2021), ECF No. 177 at 1. Even if the Court accepted Movant's argument that the act of possessing a picture of the fraudulent passport can be segregated from the rest of the conspiracy, he is still vicariously liable for Hansen's use of the passport with M.F.L.M.'s personal information in furtherance of the conspiracy. *See United States v. Geovanni*,

No. 19-11044, 2022 WL 291761, at *9 (11th Cir. Feb. 1, 2022) (holding that there was sufficient evidence to find the defendant guilty of conspiracy to commit bank fraud where "as a party to the conspiracy, [the defendant knew] his coconspirators would submit fraudulent loan applications in furtherance of the conspiracy").[5]  Since defense counsel correctly informed Movant that the Government could prove every element of aggravated identity theft, she did not render ineffective assistance of counsel.  *See Burt v. Titlow*, 571 U.S. 12, 23 (2013) ("Without evidence that [counsel] gave incorrect advice or evidence that [s]he failed to give material advice, [Movant] cannot establish that [her] performance was deficient.") (cleaned up).  Ground One is thus **DENIED**.

**B. Ground Two**

Ground Two of the Motion presents two subclaims related to Movant's failure to file a direct appeal.  First, Movant alleges that the trial court incorrectly announced that Movant had waived his right to file an appeal during his sentencing hearing which "had the effect of conveying to Petitioner that he ha[d] already waived his right to appeal[.]" Mot. at 16.  Second, Movant then claims that the trial court's error was compounded by his own attorney when she purportedly

---

[5] Movant's final long shot argument is that he cannot be guilty of aggravated identity theft because Hansen "who possessed the tangible passport and used it for fraudulent activity" was not charged with that crime. Reply at 3.  Naturally, the Government's decision to charge (or not charge) another defendant with a specific crime has no bearing on Movant's own guilt and is something a court cannot meaningfully question or second-guess.  *Cf. In re Wild*, 994 F.3d 1244, 1260 (11th Cir. 2021) ("The core of prosecutorial discretion, though—its essence—is the decision whether or not to charge an individual with a criminal offense in the first place.  The Supreme Court has repeatedly reaffirmed the principle—which dates back centuries—that 'the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.'") (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)).  Movant also ignores that, although Hansen was never charged with aggravated identity theft, the Government did charge her with falsely using a passport under 18 U.S.C. § 1543, which required the Government to specifically prove she used "a false, forged, counterfeited, and altered passport." Superseding Indictment, *United States v. Mendez, et al.*, No. 20-CR-20155 (S.D. Fla. Feb. 4, 2021), ECF No. 61 at 14.  Since a fraudulent passport is also a "means of identification" as defined by the aggravated identity theft statute, the Government still had the burden of proving material similar elements no matter what crime it charged Hansen with.  *See Presendieu*, 880 F.3d at 1240; *see also* 18 U.S.C. § 1028A(c)(7) (listing offenses involving the improper use of a passport as a predicate felony offense for aggravated identity theft).

informed Movant that he "had no right to appeal and no appeal could be taken." *Id.* Respondent, unsurprisingly, avers that neither the trial court nor trial counsel erred. The Court concludes that, while the trial court did not interfere with Movant's right to appeal, an evidentiary hearing is required to fully ascertain the veracity of Movant's ineffective assistance claim against trial counsel.

### i. Trial Court Error

As an initial matter, both Movant and Respondent agree that the trial court was obligated to inform Movant of his right to appeal <u>his sentence</u> since Movant had entered a guilty plea. *See* FED. R. CRIM. P. 32(j)(1)(B) ("After sentencing—regardless of the defendant's plea—the court must advise the defendant of any right to appeal the sentence."). The issue, in Movant's mind, arose from the following exchange between the sentencing court and Movant:

> The Court: <u>You have 14 days to file the Notice of Appeal</u>. I gave you a sentence below the guidelines and ruled in your favor on the two objections. <u>Do you wish to appeal this sentence</u>?
>
> Defendant Gonzalez: No, Your Honor.
>
> The Court: Are you happy with your lawyer?
>
> Defendant Gonzalez: Yes, very happy.
>
> The Court: <u>I find that the waiver of appellate rights was freely, voluntarily entered</u> and that you're represented by competent counsel with whom you have expressed satisfaction.

Sentencing Tr., *United States v. Mendez, et al.*, No. 20-CR-20155 (S.D. Fla. Mar. 30, 2022), ECF No. 302 at 92 (emphasis added).

Movant claims the sentencing court's pronouncement that Movant had waived his appellate rights was improper, confusing, and prevented him from fully understanding that he still had the right to appeal his sentence. *See* Mot. at 16 ("The Court's failure to unequivocally advise Petitioner

Page **13** of **19**

of his [right to] appeal . . . deprived Petitioner of [his] right to appeal[.]"). In *Peguero v. United States*, 526 U.S. 23 (1999), the Supreme Court held that a violation of Rule 32 "does not entitle a defendant to collateral relief in all circumstances. Our precedents establish, as a general rule, that a court's failure to give a defendant advice required by the Federal Rules is a sufficient basis for collateral relief only when the defendant is prejudiced by the court's error." *Id.* at 27. Thus, to establish relief on this claim, Movant must show that the sentencing court (1) violated Rule 32(j) by not informing him of his right to appeal, and (2) he was prejudiced by this error.

Assuming that the sentencing court erred, the Court still finds that Movant was not prejudiced. The sentencing court <u>did</u> inform Movant that he had "14 days to file the Notice of Appeal," meaning that Movant had "full knowledge of his right to appeal." *Id.* at 28. Although the sentencing court arguably contradicted this warning by finding that Movant had "freely" and "voluntarily" waived his appellate rights, that "waiver" occurred <u>after</u> Movant had been informed of his right to appeal and <u>after</u> Movant stated in open court that he <u>did not want to appeal his sentence</u>. *See* Sentencing Tr., *United States v. Mendez, et al.*, No. 20-CR-20155 (S.D. Fla. Mar. 30, 2022), ECF No. 302 at 92. The record therefore establishes that the court informed Movant of his right to appeal, and that any confusion thereafter was a result of Movant's apparent change-of-heart after claiming at sentencing that he did not intend to appeal. *See id.*

In addition, any prejudice that could have been imputed to the sentencing court was obviated when counsel allegedly informed Movant that he could not appeal. *See* Mot. at 16 ("Petitioner inquired of Counsel following the sentencing and the Court's advise [sic] that he already waived his right to appeal, and Counsel advised that Petitioner had no right to appeal and no appeal could be taken[.]"). A nearly identical issue was raised in *Sims v. United States*, No. 07-CV-1068, 2007 WL 9735521 (N.D. Ga. Oct. 3, 2007). There, like the instant case, a § 2255

movant claimed that the sentencing court "failed to advise him of his right to appeal at resentencing" and that his attorney was ineffective for failing to "file an appeal of the resentencing after Movant instructed him to do so[.]" *Id.* at *1. The district court found that "Movant's knowledge of his right to appeal"—and the alleged Rule 32 error—was "of no consequence" since the purported error was superseded by counsel's failure to file an appeal. *Id.* at *2 (citing *Peguero*, 526 U.S. at 28); *see also United States v. Castma*, No. 96-CR-14051, 2004 WL 7340350, at *2 (S.D. Fla. Oct. 27, 2004) (finding that, "[w]hile technically Rule 32(j)(1)(A) was not followed," the defendant demonstrated that he "nonetheless had notice of his right to appeal" since he "discussed the availability of an appeal with [counsel] after he was sentenced"). The Court finds that the logic of *Sims* applies neatly here. Any prejudice Movant suffered came from his attorney, not the sentencing court, since (if Movant's allegations are true) a competent attorney would have told Movant that he could have appealed no matter what the sentencing court said. Accordingly, Ground Two is **DENIED** insofar as it alleges that the sentencing court erred.

### ii.  *Ineffective Assistance of Counsel*

Counsel's effectiveness, however, is more of an open question. Movant alleges that, after he was sentenced, he asked counsel whether an appeal was available to him; counsel then told Movant that he "had no right to appeal and no appeal could be taken." Mot. at 16. Movant now argues that this advice was incorrect and that, had he been properly informed of his appellate rights, he would have appealed his sentence. *Id.* Respondent contends that Movant was not prejudiced by counsel's failure to file an appeal. *See* Resp. at 13. This time, the Court finds that Movant's allegations are entitled to a presumption of prejudice and that an evidentiary hearing is necessary to resolve this claim.

The Supreme Court recognizes two "categories" of errors counsel can make in regard to an appeal. One, "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Two, "[c]ounsel has a constitutional duty to <u>consult</u> with a defendant about an appeal when: (1) any rational defendant would want to appeal; or (2) the defendant reasonably demonstrated an interest in appealing." *Thompson v. United States*, 504 F.3d 1203, 1207 (11th Cir. 2007) (emphasis added). Whether counsel performs deficiently in failing to consult his or her client about an appeal is based on "all of the information counsel knew or should have known" at the time the appeal could have been filed. *Flores-Ortega*, 528 U.S. at 480. If "counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken," then the court must apply a "presumption of prejudice regardless of how many appellate claims were foreclosed." *Garza v. Idaho*, 139 S. Ct. 738, 747 (2019) (quoting *Flores-Ortega*, 528 U.S. at 484).

The Court finds that the first type of error could not have occurred since Movant never explicitly asked counsel to file an appeal on his behalf. *See* Mot. at 16. Nevertheless, the Court disagrees with Respondent's contention that Movant "fails to meet his burden to establish prejudice from any failure by his counsel to consult regarding an appeal of his conviction." Resp. at 13. While Respondent maintains that "there [was] not any non-frivolous basis to appeal," frivolity does not necessarily preclude prejudice. *Id.* at 14. "We need not decide whether a rational defendant would want to appeal . . . . [when] there is reason to think that [Movant] demonstrated he was interested in appealing." *Rios v. United States*, 783 F. App'x 886, 892 (11th Cir. 2019) (cleaned up). Movant clearly maintains that he asked counsel about the legality of an appeal—

and had counsel said an appeal was proper, he would have instructed her to file a notice of appeal. *See* Mot. at 16.

Given these allegations, the Court finds that Movant had demonstrated interest in an appeal; that counsel was required to properly consult with Movant about his right to appeal; and that the Court must presume that Movant was prejudiced even if his appeal would have been meritless. *See Thompson*, 504 F.3d at 1207–08 ("Because a direct appeal of a federal conviction is a matter of right, we determine whether a defendant has shown that there is a reasonable probability that he would have appealed without regard to the putative merits of such an appeal.") (cleaned up); *see also Garza*, 139 S. Ct. at 747 ("[W]hen deficient counsel causes the loss of an entire proceeding, it will not bend the presumption-of-prejudice rule simply because a particular defendant seems to have had poor prospects . . . . Instead, we reaffirm that, 'when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal,' with no need for a 'further showing' of his claims' merit[.]") (quoting *Flores-Ortega*, 528 U.S. at 480).

The Court recognizes Respondent's valid concern that Movant's actions at resentencing—where he stated under oath that he was not interested in filing an appeal—conflict with the Movant's <u>current</u> representation that he would have appealed if properly advised. *See* Resp. at 14–15. The Court also notes that, despite Movant's insistence that he was interested in appeal, he never identifies what the basis for that appeal would have been. *See* Mot. at 16. That said, a § 2255 movant is still "entitled to an evidentiary hearing if he alleges facts that, if true, would entitle him to relief." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014). Once a movant passes this hurdle, he must be given the opportunity to meet his full burden of proof at an

evidentiary hearing. *See Aron v. United States*, 291 F.3d 708, 715 n.6 (11th Cir. 2002) ("If the allegations are not affirmatively contradicted by the record and the claims are not patently frivolous, the district court is required to hold an evidentiary hearing. It is in such a hearing that the petitioner must offer proof."). Since Movant's allegations, if true, would establish a valid ineffective assistance of counsel claim under binding Supreme Court precedent, the Court will grant an evidentiary hearing and appoint counsel to assist Movant during the pendency of that hearing. *See* 28 U.S.C. § 2255(b), (g).

## CERTIFICATE OF APPEALABILITY

A habeas petitioner has no absolute entitlement to appeal a district court's final order denying his habeas petition. Rather, to pursue an appeal, a postconviction movant must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). Issuance of a COA is appropriate only if a litigant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do so, litigants must show that reasonable jurists would debate either "whether the [motion] states a valid claim or the denial of a constitutional right" or "whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court will reserve ruling on whether Movant is entitled to a COA until after an evidentiary hearing has been held on the ineffective-assistance-of-counsel claim in Ground Two.

## CONCLUSION

Having carefully reviewed the record and governing law, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Motion to Vacate [ECF No. 1] is **DENIED in part**. Ground One and the trial court error claim alleged in Ground Two are **DENIED**.

2. The Court will **GRANT** an evidentiary hearing, pursuant to 28 U.S.C. § 2255(b), on the ineffective assistance of counsel claim raised in Ground Two of the Motion.

3. The Federal Public Defender's Office is hereby **APPOINTED** to represent Movant at all further stages of this § 2255 proceeding, both before the District Court and in any appellate proceedings.  If the Federal Public Defender's Office has a conflict that prevents it from representing Movant, it shall inform the Court of this conflict as soon as practicable.

4. Pursuant to 28 U.S.C. § 636(b)(1)(A) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, the above-styled case is **REFERRED** to United States Magistrate Judge Jacqueline Becerra for an evidentiary hearing and a Report and Recommendation on the hearing.  The date and time of this hearing will be set by Magistrate Judge Becerra in a future order.

**DONE AND ORDERED** in Miami, Florida, on this 5th day of January, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc:   Counsel of record

Jonnathan Jesus Gonzalez
28548-509
Allenwood Low Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 1000
White Deer, PA 17887
PRO SE

Federal Public Defender's Office
MIA_ECF@FD.org